IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RONDELLTE R. FRAZIER, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-00888-O |
| | § | |
| DALLAS/FORT WORTH | § | |
| INTERNATIONAL AIRPORT et al., | § | |
| | § | |
| | § | |
|   Defendants. | § | |

**ORDER**

    Before the Court are five motions for summary judgment, filed individually by each of five Defendants, Dallas/Fort Worth International Airport Board ("DFW"), Manhattan/Byrne/JRT/3i ("MBJ3"), Manhattan Construction Company ("Manhattan"), James R. Thompson. Inc. ("JRT"), and Thos S. Byrne, Ltd. ("Byrne"). *See* ECF Nos. 101–15. Plaintiff has filed individual responses to each of the motions, although the responses and their appendices are largely identical. *See* ECF Nos. 126–33, 140–41. Defendants have each filed replies. ECF Nos. 139, 142–45. The motions are ripe for review.

    Having considered the motions, briefing, and applicable law, the Court finds that the motions (ECF Nos. 101, 104, 107, 110, 113) should be **GRANTED**.

**I.    BACKGROUND**

    Plaintiff Rondellte Frazier is an African American male and has been employed with DFW as a Civilian Security Officer ("CSO") since June 2011. CSOs are responsible for ensuring the security of terminals at the airport, including checking incoming cars and unattended vehicles for weapons, and monitoring the terminals' perimeter. DFW's Mot. App. 2–3, ECF No. 106-1.

1

Plaintiff alleges that in June 2013 his female supervisor at DFW, Caroline Chane, began scheduling him to work at the most difficult gates, rather than rotating him through less demanding and lower-traffic gates, as was the normal scheduling practice. Am. Compl. ¶ 28, ECF No. 16. When Plaintiff approached Ms. Chane to discuss the scheduling issue, Ms. Chane mocked Plaintiff, calling him a "titty baby" in front of staff and co-workers. *Id.* ¶ 29; Pl.'s Resp. DFW's Mot. App. 7 ¶ 6, ECF No. 141. Around September 2013, Plaintiff filed "a formal complaint" against Ms. Chane. *Id.* at 7 ¶ 7. He did not receive any response to the complaint. *Id.* Plaintiff alleges in his Amended Complaint that "[t]his incident was the catalyst for a chain of negative treatment," primarily related to shift schedules and off-duty work, which culminated in his suspension from off-duty work with Defendant MBJ3. Am. Compl. ¶ 29, ECF No. 16.

MBJ3 is a joint venture formed in 2010 by Defendants Manhattan, JRT, Byrne, and 3i.[1] Manhattan's Mot. App. 27, ECF No. 115-1. In 2010, MBJ3 entered into a contract with DFW to perform construction work. *Id.* Some of the areas under construction by MBJ3 include Secure Identification Display Areas ("SIDA"), which are restricted access areas under Department of Homeland Security and Transportation Security Administration rules. *Id.* at 1. DFW requires MBJ3 to use CSOs employed by DFW with SIDA clearance to secure SIDA areas while construction work is being performed. *Id.* These positions for CSOs are called off-duty posts. DFW's Mot. App. 92–99, ECF No. 106-1.

CSOs are not required to work off-duty posts. *Id.* at 95–96. Contractors requiring CSOs for off-duty posts submit their scheduling requests to DFW, and then DFW prepares a master list of available off-duty posts. *Id.* at 95–97. DFW circulates the master list to CSOs via email and

---

[1] Plaintiff's claims against Defendants Manhattan, JRT, Byrne, and 3i are derivative of Plaintiff's claims against their joint venture MBJ3. The Court will refer to these Defendants and MBJ3 collectively as the "MBJ3 Defendants."

specifies a call-in date and time for CSOs to select their preferred off-duty posts. *Id.* at 94–99. Off-duty posts are filled on a first-come, first-served basis. *Id.*

Plaintiff began providing off-duty services for MBJ3 in 2012. Manhattan's Mot. App. 2, ECF No. 115-1. There were no problems between MBJ3 and Plaintiff until April 4, 2014, when Plaintiff was involved in a verbal confrontation with MBJ3's then-assistant superintendent, Matthew Humphries, while performing off-duty work for MBJ3. That morning, Mr. Humphries received a call from a private security officer stationed at gate 4ES informing him that Plaintiff had parked his car where it was obstructing the entry for deliveries at the gate. *Id.* The security officer informed Mr. Humphries that Plaintiff was confrontational and belligerent and that Plaintiff cursed at him after he attempted to ask Plaintiff to move his vehicle. *Id.* It was later revealed Plaintiff had not cursed at the security officer, but at the time, Mr. Humphries informed the airport's Department of Public Safety ("DPS") about Plaintiff's reported behavior, including that he had cursed. Pl.'s Resp. DFW's Mot. App. 4, ECF No. 141; Manhattan's Mot. App. 2, ECF No. 115-1. Mr. Humphries then traveled to the gate, accompanied by two DFW police officers, to get Plaintiff's vehicle moved from the restricted area. Manhattan's Mot. App. 2, ECF No. 115-1. Once Mr. Humphries arrived at the gate, a DFW police officer located Plaintiff so that he could move his vehicle. *Id.* Plaintiff arrived "in a much calmer state, than what had been reported" to Mr. Humphries. *Id.* Plaintiff then moved his car to MBJ3's parking area. *Id.* Plaintiff and Mr. Humphries then both returned to work. *Id.*

A few hours later, Mr. Humphries received another phone call from the private security officer stationed at the gate, who stated that Plaintiff wanted to speak with Mr. Humphries. Because he could not meet with Plaintiff in person, Mr. Humphries spoke with him over the phone. *Id.* Mr. Humphries's and Plaintiff's accounts of the call differ.

3

According to Mr. Humphries, Plaintiff accused Mr. Humphries of lying when he reported that Plaintiff had cursed at the security guard. *Id*. Mr. Humphries informed Plaintiff that he had only repeated what he had been told. *Id.* Plaintiff then began "arguing with and yelling and cursing at" Mr. Humphries. *Id.* Eventually, Plaintiff called Mr. Humphries a liar and Mr. Humphries soon hung up the phone. *Id.* at 3.

According to Plaintiff, it is untrue that he argued, yelled, or called Mr. Humphries a liar. Pl.'s Resp. DFW's Mot. App. 8 ¶ 9, ECF No. 141. Plaintiff concedes that he confronted Mr. Humphries about informing DPS that he had cursed, but he contends that Mr. Humphries was the one yelling and cursing. According to Plaintiff, Mr. Humphries called him a "punk muther[sic]-fucker." *Id*. Plaintiff also stated during his deposition that in response to Mr. Humphries's aggression, he told Mr. Humphries to come find him in person to continue the confrontation. MBJ3's Mot. App. 57–58, ECF No. 109-1. Plaintiff later conceded that this threatening behavior was unprofessional. *Id.*

Whatever the content of the call, shortly after the incident, Mr. Humphries contacted DFW and requested that Plaintiff no longer be assigned to off-duty shifts for MBJ3. Manhattan's Mot. App. 3, ECF No. 115-1. DFW granted MBJ3's request and informed Plaintiff of the decision by May 8, 2014. *Id.* at 113–14. While Plaintiff no longer was assigned off-duty posts with MBJ3, he remained eligible for, and continued to obtain, off-duty posts for all other contractors. DFW's Mot. App. 29–30, ECF No. 106-1.

Based on these events, Plaintiff brings claims for (1) Title VII gender discrimination; (2) Title VII race discrimination based on disparate impact; (3) Title VII retaliation; and (4) discrimination under the Texas Commission on Humans Rights Act ("TCHRA"). *See generally*

4

Am. Compl., ECF No. 16.[2]  Defendants now move for summary judgment on each of Plaintiff claims.

## II. LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id*. at 250.

---

[2] The Court dismissed Plaintiff's claims for violations of his constitutional rights under 42 U.S.C. § 1983 and for intentional infliction of emotional distress in its November 17, 2016 Order on Defendants' motions to dismiss. *See* ECF No. 86.

III. ANALYSIS

The Court discusses claims for gender discrimination, race discrimination, and retaliation in turn. Because the TCHRA parallels federal anti-discrimination laws and is subject to the McDonnell-Douglas burden-shifting framework outlined below, the Court addresses Plaintiff's Title VII and TCHRA claims together. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (holding cases interpreting Title VII guide reading of the TCHRA, and McDonnell-Douglas framework applies to TCHRA claims).

A. **Gender Discrimination**

Plaintiff alleges that he was discriminated against on the basis of gender based primarily on Ms. Chane's "titty baby" comment and adverse scheduling decisions. Defendants argue that Plaintiff's gender discrimination claim fails because Plaintiff "unequivocally denied experiencing any gender discrimination" during his deposition. DFW's Br. Supp. Mot. 8, ECF No. 105. The Court agrees.

When asked if he believed anyone discriminated against him on the basis of gender, Plaintiff replied, "No, ma'am." DFW's Mot. App. 33–34, ECF No. 106. On summary judgment, Plaintiff now seeks to contradict his deposition testimony and create a material issue of fact by asserting via affidavit: "Based on my opinion, I am the victim of gender and racial discrimination." Pl.'s Resp. DFW's Mot. App. 8, ECF No. 141. However, it is well established in this circuit that a party may not "manufacture an issue of fact in an affidavit that conflicts with prior deposition testimony without a satisfactory explanation." *Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 601 (5th Cir. 2015), *as revised* (Mar. 22, 2016) (citing *Doe ex rel. Doe v. Dallas Independent School Dist.*, 220 F.3d 380, 386 (5th Cir. 2000)). Plaintiff has not offered any explanation for the

contradiction between his deposition testimony and his affidavit. Therefore, the Court disregards his affidavit testimony and finds that there is no material issue of fact as to Plaintiff's gender discrimination claim and summary judgment should be granted.

  **B. Race Discrimination**

  Plaintiff also alleges race discrimination based on disparate treatment. A plaintiff can prove a claim of discrimination through either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). In cases where a plaintiff offers circumstantial evidence of discrimination, as Plaintiff does here, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802–05 (1973). Under this framework, a plaintiff carries the burden to establish a prima facie case of racial discrimination. *Id.* at 802. To establish a prima facie case of discrimination based on disparate treatment, Plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for his position; (3) was discharged from the position; and (4) was treated less favorably than similarly-situated persons outside of his protected class. *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

  Once the prima facie case is established, a presumption of discrimination arises and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse action against the employee. *McDonnell Douglas Corp.*, 411 U.S. at 802–05. This burden is one of production, not of persuasion. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). If the defendant meets its burden, the burden shifts back to the plaintiff to establish that the defendant's legitimate, nondiscriminatory reason was merely a pretext for discrimination. *Id*.

Here, Defendants argue that Plaintiff cannot establish a prima facie case of race discrimination because Plaintiff cannot establish that he suffered an adverse employment action or that he was treated less favorably than others similarly-situated outside his protected class. DFW's Br. Supp. Mot. 9, ECF No. 105.  Defendants further argue that even if Plaintiff were able to establish a prima facie case of discrimination, he is unable to show that their legitimate, non-discriminatory reason for removing him from off-duty shifts with MBJ3 is pretext.[3]  The Court addresses each argument in turn.

Plaintiff alleges three potential adverse employment actions as the basis for his discrimination claim: (1) he was subjected to "name calling, unjustified reprimands, unequal discipline and being treated unequally as compared to similarly situated Caucasian . . . employees"; (2) he was assigned to the "most difficult more demanding gates," rather than being rotated through the lower-traffic gates; and (3) he "was denied continued employment with MBJ3 without justification," resulting in "a twenty-two month suspension without pay." Pl.'s Resp. DFW's Mot. 2, ECF No. 140.  None of these actions constitute an adverse employment action for Title VII employment discrimination, because only "ultimate employment decisions" are actionable for Title VII discrimination claims. *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007).

Being subjected to name-calling and receiving unfavorable gate assignments are not ultimate employment decisions.  Further, these allegations are wholly unsupported by any evidence other than Plaintiff's two-page affidavit.  *See* Pl.'s Resp. DFW's Mot. App. 7–8, ECF No. 141.

Plaintiff's removal from off-duty shifts with MBJ3 is also not an ultimate employment

---

[3] The MBJ3 Defendants also contend that Plaintiff's claims fail as to the MBJ3 Defendants because MBJ3 did not have an employment relationship with Plaintiff under Title VII or the TCHRA, and Plaintiff failed to timely exhaust his administrative remedies and file suit against MBJ3. MBJ3's Br. Supp. Mot. 6–10, ECF No. 108. The Court does not address those arguments here as Plaintiff's claims fail on the merits.

decision. Off-duty posts are a supplemental, discretionary benefit. Plaintiff's compensation and benefits related to his on-duty employment with DFW remained unchanged and he continued off-duty work with other contractors. Therefore, Plaintiff's removal from off-duty shifts is not an ultimate employment decision that can support a claim for Title VII discrimination. *See Drew v. Illinois, Dep't of Human Servs.*, 101 F. App'x 637, 639 (7th Cir. 2004) (holding "[a]n adverse employment action does not include an employer's refusal to grant an employee a discretionary benefit, such as a bonus, to which he is not automatically entitled").

Plaintiff's discrimination claim also fails because Plaintiff has failed to show that others outside his protected class were treated more favorably. Plaintiff provides no summary judgment evidence to support his claims that he was treated more harshly by his supervisor or assigned more difficult gates than those outside his protected class.

As to his suspension from MBJ3, Plaintiff alleges that two or three non-African-American CSOs who fell asleep while working off-duty shifts for MBJ3 were treated more favorably than Plaintiff because they received proper policy investigations and Plaintiff did not.[4] Pl.'s Resp. MBJ3's Mot. 12, ECF No. 129. This argument fails for two reasons.

First, Plaintiff has not offered any evidence to support his claim that he was denied a policy investigation to which he was entitled.[5]

Second, even if Plaintiff had offered such evidence, his proffered comparators are not

---

[4] In some places Plaintiff indicates that he is offering two comparators; other places he indicates he is offering three. Plaintiff only provides summary judgment evidence to support his claims as to one comparator. *See* Pl.'s Resp. JRT's Mot. App. 14–15, ECF No. 128.

[5] Defendant has included in the appendices to his multiple responses what appear to be portions of DFW policy manuals regarding human resource matters. *See* Pl.'s Resp. JRT's Mot. App. 25–56, ECF No. 128. These documents are not authenticated in any way; the effective dates of nearly all of the documents postdate the events at issue here; and Plaintiff's briefs do not identify which portions of these documents, if any, support Plaintiff's claims. Therefore, the Court disregards these portions of Plaintiff's summary judgment evidence.

sufficiently similar to support Plaintiff's discrimination claim. "[I]n order for a plaintiff to show disparate treatment, she must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (internal quotations and alterations omitted) (collecting cases); *see also Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217–18 (5th Cir. 2016) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)) ("[T]he plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions."). The individuals identified by Plaintiff fell asleep while on duty and, as a result, were suspended from all off-duty shifts for three months. Here, Plaintiff engaged in a verbal confrontation with implied threats of violence with a supervisor and was suspended from off-duty shifts with only one contractor. These violations are different in kind and are thus too dissimilar to support a claim of disparate treatment. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009) (citing *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir.1990)) ("[E]mployees . . . who are subjected to adverse employment action for dissimilar violations are not similarly situated.").

Even if Plaintiff had established a prima facie case, Plaintiff's discrimination claim fails because Plaintiff cannot show that Defendants' legitimate, non-discriminatory justification for Plaintiff's removal from MBJ3 posts was pretext. Defendants contend that MBJ3 requested that DFW remove Plaintiff from off-duty work with MBJ3 because of the confrontation between Mr. Humphries and Plaintiff. This is a legitimate, non-discriminatory reason for requesting Plaintiff's removal. *See Taylor v. Seton Brackenridge Hosp.*, 349 F. App'x 874, 877 (5th Cir. 2009) (finding verbal harassment of a co-worker a legitimate, non-discriminatory reason for discharge). Thus Plaintiff bears the burden of presenting evidence of pretext.

"A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)), *cert. denied*, 136 S. Ct. 822 (2016). As discussed above, Plaintiff's evidence of disparate treatment fails. Plaintiff has not offered any evidence, beyond his own version of events, to show that Defendants' explanation is false or unworthy of credence. Accepting Plaintiff's version of events as true, it is undisputed that Plaintiff parked his car in front of a delivery gate, despite the request of other security officers to move it, and later had an aggressive confrontation with Mr. Humphries, in which Plaintiff told Mr. Humphries to come find him in person to continue the confrontation. JRT's Mot. App. 2–3, ECF No. 103; MBJ3's Mot. App. 57–58, ECF No. 109-1. This corroborates, rather than undermines, MBJ3's justification for requesting Plaintiff's removal from off-duty posts. Therefore, Plaintiff has not carried his burden to show that MBJ3's proffered justification is pretext for discrimination.

As Plaintiff cannot establish a prima facie case of discrimination and cannot show that Defendants' proffered justification is pretext, Plaintiff's race discrimination claims fail as a matter of law.

### C. Retaliation Claim

Lastly, Defendants move for summary judgment on Plaintiff's retaliation claims. "A plaintiff establishes a prima facie case of retaliation by showing (i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)). A "protected activity" must involve opposition to discriminatory conduct. *Mota v.*

*Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001) (citing 42 U.S.C. § 2000e–3(a) (2001); *Evans v. City of Houston*, 246 F.3d 344, 352–53 (5th Cir. 2001)).

While not entirely clear, Plaintiff appears to argue that his 2013 complaint regarding Ms. Chane is the protected activity for which he was retaliated against.[6] *See* Pl.'s Resp. DFW's Mot. 8 ¶ 15, ECF No. 141. Plaintiff has not offered any summary judgment evidence indicating that his complaint against Ms. Chane involved any reporting of or opposition to discriminatory conduct that would constitute protected activity. According to Plaintiff's Amended Complaint, he was retaliated against "for complaining in general about the circumstances of his work environment, including, but not limited to, being removed from posts, erratic schedule changes, and removal of his preferred off day from the shift rotation and schedule." Am. Compl. ¶ 46, ECF No. 16. This is not protected activity that can support a claim for retaliation.

Even if Plaintiff's complaint regarding Ms. Chane was a protected activity, there is no evidence, other than Plaintiff's subjective belief, of a causal connection between the complaint and Defendants' actions. Plaintiff has not offered any competent summary judgment evidence showing that any decision-maker involved in Plaintiff's removal from off-duty posts with MBJ3 had any knowledge of Plaintiff's complaints regarding Ms. Chane at the time the removal decision was made. As Plaintiff cannot show that he engaged in a protected activity or that any alleged protected activity was causally linked to any adverse employment action, Plaintiff's retaliation claim fails as a matter of law.

---

[6] On or about May 9, 2014, Plaintiff filed a charge of discrimination against "DFW Airport/MBJ3" with the Equal Employment Opportunity Commission ("EEOC"). DFW's Mot. App. 11, ECF No. 106-1. On or about May 14, 2015, he filed a second charge with the EEOC, this time against "Manhattan/Byrne/JRT/3i." *Id.* at 13. Each of these charges was filed after Plaintiff was removed from off-duty posts with MBJ3 and, therefore, cannot support Plaintiff's retaliation claim.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Defendants' motions for summary judgment (ECF Nos. 101, 104, 107, 110, 113) should be and are hereby **GRANTED**. Accordingly, it is **ORDERED** that Plaintiff's claims are **DISMISSED with prejudice**. A final judgment will issue by separate order.

**SO ORDERED** on this **17th day** of **July, 2017.**

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**